ORIGINAL ORIGINAL

*IN THE UNITED STATES COURT OF FEDERAL CLAIMS*

FILED
MAY 19 2008
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **MARY E. VERBECK,** | ) | |
| | ) | |
| ***Plaintiff,*** | ) | |
| | ) | |
| **vs.** | ) | **NO.:** 08-357 C |
| | ) | |
| **THE UNITED STATES,** | ) | Judge ________ |
| | ) | |
| ***Defendant.*** | ) | |
| | ) | |

COMPLAINT

***Jurisdiction***

1. The Court has jurisdiction under 28 U.S.C. § 1491(a) (1) and (2). The action seeks a judgment against the United States for Public Health Service ("PHS") back pay and allowance, retired pay, and ancillary relief.

2. The money mandating statutes are 42 U.S.C. § 213(a)(2); 37 U.S.C. §204; 10 U.S.C. § 1203. The claims also rest on the PHS Commission Corps Personnel Manual ("CCPM"), Subchapter CC 25.1, Instruction 1, Section C(2), Subchapter CC 23.8, Personnel Instruction 6, Section C, Subchapter CC 43.8, Section G(1), Subchapter CC 49.3, Instruction 1, Subchapter CC Section 23.6, Instruction 4.

///

## *The Parties*

3. Plaintiff Mary E. Verbeck resides at 6442 Ambrosia Drive, Apt. 5303, San Diego, California 92124. While serving as a Lieutenant Commander (LCDR) in the PHS Commissioned Corps Officer, she was retaliated against for filing an EEO complaint.

4. Defendant is the United States of America.

## *Statute of Limitations and Exhaustion of Administrative Remedies*

5. On or about May 26, 2005, pursuant to 10 U.S.C. § 1552(a) and 10 U.S.C. § 628(b)(1), Plaintiff submitted an application to the PHS Board for Correction of Commissioned Corps Records ("BCCCR") with a request for relief. On or about March 28, 2007, the BCCCR denied Plaintiff's application.

## *Statutory and Regulatory Framework*

6. The PHS Commissioned Corps is a uniformed service. 37 U.S.C. § 101(3).

7. Commissioned Corps officers, including probationary officers, 42 U.S.C. § 210, have a statutory entitlement to pay (37 U.S.C. § 204(a)(1)).

8. The Commissioned Corps Personnel Manual ("CCPM"), Part 2, Subchapter CC 23.7, Personnel Instruction 1, governs the involuntary separation of active duty reserve corps officers. These provisions implement 42 U.S.C. § 209.

Section D, Paragraph 1, provides that:

> "[a]t any time during the probationary period, an officer may be separated from active duty for reasons including, but not limited to, the following: (1) abolishment of an officer's position....; (2) unsuitability...; (3) failure to demonstrate the level of performance, conduct, dedication to duty, or professional attitude and attributes expected of an officer in the uniform services; (4) refusal to accept reassignment; or (5) unsatisfactory conduct before call to active duty..."

9. Discrimination and reprisal are not legitimate grounds for involuntary separation of probationary officers. CCPM, Part 4, Subchapter CC 46, Personnel Instruction 1, Section E, provides that:

> "[e]very officer or applicant shall be free from any and all restraint, interference, coercion, or reprisal on the part of fellow officers or employees, supervisors, or other management officials in lodging any allegation relating to discrimination, filing or pursuing any complaint or appeal, appearing as a witness or serving as a representative or as an advisor to a complaint, or other action related thereto."

10. 42 U.S.C. § 213(a)(2) and 10 U.S.C. § 1203 provide for disability compensation for active duty members of the Commissioned Officer Corps. CCPM, Subchapter CC 23.8, Personnel Instruction 6, Section C, provides that:

> "[a]ll officers, reserve or regular, serving on active duty are covered by the above indicated disability retirement provisions with the exception of commissioned officers student training and extern program (COSTEP) and senior COSTEP participants who are excluded from disability retirement under section 221a(2) of the PHS 42 U.S.C. 213(a)(2)."

11. CCPM, Subchapter CC 43.8, Section G(1), provides that:

> "[a]n officer may be considered for disability retirement with or without a specific application from the officer for such retirement. All such cases shall be referred to a medical review board (and such subboards as deemed necessary) established pursuant to regulations contained in subchapter CC 49.3, instruction 1, of this Manual."

12. Subchapter CC 49.3, Instruction 1, further provides that:

> "[t]he Surgeon General (SG) shall appoint medical review boards as necessary to review the case of any officer who may be entitled to retirement due to physical disability, in the case of any officer whose name has been placed on a temporary disability retirement list and who is required to undergo a periodic physical examination, and the case of any officer who, after his appointment in the regular corps, or called to active duty in the reserve corps, is required to undergo a physical examination, the results of which indicate a possible physical disqualification for further service."

13. Commissioned Corps officers' records are subject to correction for error or injustice by the civilian BCCCR, under Section 221a(a)(12) of the PHS Act. 42 U.S.C. § 213a(a)(12) (extending correction of military records provisions of 10 U.S.C. § 1552 to Commissioned Corps personnel).

14. Under 10 U.S.C. § 1552(g), the term "military record" means a document or other record that pertains to (1) an individual member or former member of the armed forces, or (2) at the discretion of the secretary of the military department concerned, any other military matter affecting a member or a former member of the armed forces, an employee or former employee of that military department, or a dependent or current or former spouse of any such person. Such term does not

include records pertaining to civilian employment matters, such as matters covered by Title V and Chapters 81, 83, 87, 108, 373, 605, 607, 643, and 873 of Title 10, U.S. Code.

### *Statement of Facts*

#### *A. Career Performance*

15. LCDR Verbeck served in the United States Navy as an active duty nurse corps officer from 1987 to 1996. She continued her Navy service as an active reservist from 1996 to 1999, while maintaining a 3.9 GPA in a course of study leading to her receipt of the degree of Master of Science in Nursing, completing her board certification as a Family Nurse Practitioner, and obtaining her Advanced Registered Nurse Practitioner License in the state of Florida. On January 29, 1997, she was awarded a Navy and Marine Corps Commendation Medal for her meritorious service from June 1992 to August 1996.

16. On November 1, 1999, LCDR Verbeck resigned her naval commission to join PHS Commissioned Corps as a Family Nurse Practitioner, receiving Exceptional Overall Job Performance for two consecutive years. Early on, she was recognized for her teamwork and leadership. LCDR Verbeck received a "Recognition Award" for "Outstanding Team Work!" on May 5, 2000, signed by the Director of the Division of Immigration Health ("DIHS"), Eugene Migliaccio, Dr. P.H.,

PHS. She received "The Hazardous Duty Award" on June 21, 2000, signed by PHS Director of Commissioned Personnel, RADM R. Michael Davidson.

17. LCDR Verbeck's June, 2001 Commissioned Officers' Effectiveness Report, prepared by CDR Roberta Lavin, USPHS, Chief of Field Operations, DIHS's reviewing official, opined that "[t]his officer has the potential for Great Success!" CDR Anthony, the Health Service Administrator at San Pedro, California, similarly wrote that "LT Verbeck is a high achiever who is motivated to excellence. She earns the respect of her professional colleagues with her strong commitment to top quality patient care. LT Verbeck has shown exceptional professional growth during this rating period. She continues to be an asset to our division and the USPHS. Without any reservations, I support her further career advancement in the USPHS."

18. LCDR Verbeck was recommended for promotion to Commander in October 2001 by CDR Lavin, the Chief of Field Operations, and CDR Anthony, Health Service Administrator, at San Pedro, CA.

19. LT Verbeck received a commendation for outstanding performance, dated May 14, 2001, from DIHS, INS (presently known as DHS), and the Los Angeles Fire Department.

20. LCDR Verbeck received a commendation for exceptional skills on

August 17, 2001, from DIHS.

21. LCDR Verbeck received a commendation for lifesaving actions on August 8, 2001 from INS Security Personnel.

22. Thereafter, LCDR Verbeck received a commendation recognizing her dedication to the DIHS mission.

23. In a May 9, 2002 memorandum, her clinical director, K. Sowinski, M.D., wrote that "[LCDR Verbeck] has proven to be a superior nurse practitioner with excellent clinical skills. She has good clinical acumen, can practice independently, and shows good judgment seeking Consultation when appropriate."

***B. Onset of Illness and Developing Discrimination Action***

24. On September 4, 2001, while on active duty with the DIHS Unit in San Pedro, California, LCDR Verbeck was diagnosed with breast cancer.

25. After LCDR Verbeck underwent a mastectomy, she persevered in her service while undergoing antibiotic therapy for a staph infection, and while having to perform wound care on herself more than three times per day. As a result of her breast cancer and related complications, LCDR Verbeck developed Major Depression, Single Episode, which was controlled with medication.

26. LCDR Verbeck's staph infection was aggravated by an assault by a detainee on January 1, 2002. She required emergency surgery on January 4, 2002.

Upon returning from sick leave on January 18, 2002, she was again assaulted by a detainee who attempted to strangle her during a mental health examination.

27. LCDR Verbeck was then put on the night shift from 7:00 p.m. to 7:00 a.m. for the entire month of February 2002. Being the sole medical provider for the entire detention center during that period of time, she arrived for her shift on February 6, 2002 and found a threatening letter from another detainee, which included the following statement: "...You know something Mary- I got you!"

28. On February 6, 2002, LCDR Verbeck reported to her command several potential violations of unsafe labor practices as defined by the Occupational Safety and Health Administration ("OSHA") and the Joint Commission on Accreditation of Healthcare Organization ("JCAHO").

29. On February 19, 2002, LCDR Verbeck filed by mail an Equal Employment Opportunity (EEO) complaint under CCPM Chapter Series CC26, Subchapter CC26.1.

30. In a February 25, 2002 letter, Patricia L. Mackey, Director, Office of Equal Opportunity and Civil Rights, accepted the following issues:

-You alleged that because of the "perceived" physical or mental disability, on February 14, 2002 management required you to furnish a medical documentation that would release you to return to full duty after your absence February

7 and February 12, 2002.

-You alleged retaliation because after you had notified management that you had filed an EEO complaint and filed a report the Department of Labor office of Occupational and Safety and Health administration (OSHA), on February 20, 2002, Management placed you on a 60 days "Nonduty with Pay Status" pending a second Opinion evaluation by the Medical Affairs Branch regarding your illnesses of February 7, 2002 and February 12, 2002.

-You alleged that management had acted in a malicious manner when they inappropriately released information, which was incorrect about your work history and perceived mental disability from your previous assignment at Queens, NY and your current assignment at San Pedro, CA.

32. While the EEO investigation was proceeding in March and April 2002, an anonymous complaint was filed with OSHA and an investigation was initiated regarding unsafe health practices. Unbeknownst to PHS, the complaint was filed by Timothy W. Kahn, USPHS. Yet, on February 15, 2002, CDR Anthony communicated to DIHS headquarters that LCDR Verbeck had filed an OSHA complaint. On March 8, 2002, in DIHS's response to OSHA, DIHS implicated LCDR Verbeck as the one who had submitted the OSHA complaint.

33. In a letter dated February 15, 2002, David G. Hooper, Captain,

USPHS, began a Fitness for Duty investigation, which was initiated by fraudulent statements by CDR Anthony and LTJG Abaya. The investigation was undertaken at the request of CDR Anthony, that, in part, acknowledged that "[LCDR Verbeck] recently [had] another surgery pending and [has] developed in accordance with your recent VA physician's certification for sick leave, "Major Depression with acute exacerbation." However, the actual sick leave slip stated the diagnosis from Dr. Kathleen A. Frechen, M.D. as "Major Depression with acute exacerbation secondary to workplace Harassment!"

34. PHS officials also questioned the diagnosis rendered by LCDR Verbeck's treating psychiatrist, Dr. Frechen, that LCDR Verbeck was suffering from Major Depression, Single Episode. This diagnosis was precipitated by her breast cancer, subsequent surgery and complications during healing. She was started on sertraline, an anti-depressant, with good response. Dr. Fechen also noted an exacerbation of the depression, however, due to the ongoing harassment from an inmate housed in her section of care. As she worked in an isolated area at night, there was no apparent redress to this harassment. However, her clinical judgment has never been in question. LCDR Verbeck is considered fit for full duty. PHS subjected her to another mental health evaluation, rendered by CAPT Nash, M.D., US Navy, who found LCDR Verbeck was fit for full duty.

35. On February 20, 2002, CDR Yvonne Anthony, USPHS, Health Services Administrator, placed LCDR Verbeck into "Nonduty With Pay Status."

### *C. Retaliation and Termination*

36. On May 1, 2002, PHS notified LCDR Verbeck that she was being terminated.

37. The termination letter stated that LCDR Verbeck's "repeated failure to adhere to the conduct expected of an officer in a Uniformed Service indicated your lack of suitability for continued service. Further, you have demonstrated a lack of professional attitude and attributes expected of an officer in a Uniformed Service."

38. The letter provides no factual basis whatsoever for the action, yet the USPHS "[found] sufficient cause to terminate [LCDR Verbeck's] commission for unsuitability and lack of professional attitude and attributes pursuant to CC23.7 'Involuntary Separation During the Probationary Period'...The attached personnel order terminates your commission effective June 1, 2002." This is contrary to the regulations for the procedure of "Involuntary Separation," as established by CC23.7.

39. LCDR Verbeck filed a reprisal complaint against Admiral Davidson, asserting that she had been terminated for filing an EEO complaint.

40. Prior to being discharged, LCDR Verbeck forwarded to Admiral

Davidson a May 9, 2002 memorandum from her clinical director, Kenneth Sowinski, M.D., who wrote that "[LCDR Verbeck has proven to be a superior nurse practitioner with excellent clinical skills. She has good clinical acumen, can practice independently, and shows good judgment seeking consultation when appropriate."

41. Prior to her actual termination, LCDR Verbeck also requested that her termination be held in abeyance until she could be qualified for medical release from the PHS, and thus receive care for abnormalities to her uterus, mental health treatment for her depression, and continued care for reconstruction as a result of her mastectomy.

42. Notwithstanding this request, Admiral Davidson upheld the termination, discharging LCDR Verbeck on June 1, 2002.

43. In a June 3, 2002 response, Denise Canton, on behalf of Admiral Davidson, asserted for the first time that in an April 4, 2002 request, the Immigration and Naturalization Service ("INS", presently known as "PHS") had sought LCDR Verbeck's termination "due to unsuitability and failure to demonstrate the level of performance, conduct, and dedication to duty expected of an officer in the Uniformed Services."

44. April 4, 2002 was the day which JCAHO advised LCDR Verbeck it

had forwarded her complaint to the INS.

45. On the afternoon of June 7, 2002, CDR Anthony, Health Service Administrator, held an employee meeting in which she announced to all staff present that LCDR Verbeck had been terminated, without further explanation. She failed to state that LCDR Verbeck's discharge was characterized as honorable.

46. In a June 17, 2002 letter, Admiral Davidson again found LCDR Verbeck's termination to be lawful, even though he gave no basis for the decision.

47. LCDR Verbeck's EEO and reprisal complaints were merged into a single investigation. However, no final decision was ever rendered. The investigation was simply allowed to languish.

48. Pursuant to the Freedom of Information Act, 5 U.S.C. 552, and the Privacy Act, 5 U.S.C. 552(a), LCDR Verbeck obtained an April 4, 2002 memorandum, which was ostensibly relied upon by Admiral Davidson, along with other documents. The memorandum was an internal memorandum from DIHS, which is part of PHS. The PHS memorandum and other documents forwarded by PHS after LCDR Verbeck's termination were never provided to LCDR Verbeck so that she could respond to the termination action, let alone the substantive matters addressed therein.

49. The alleged existence of the INS documentation previously referenced

and relied upon by Admiral Davidson is also cited in an affidavit signed by CDR Chapman referenced in a recommended decision by the Surgeon General issued on or about December 27, 2003 regarding LCDR Verbeck.

50. LCDR Verbeck filed a complaint on November 1, 2004, case number CV 04-9034 MMM (FMOx), brought under the Freedom of Information Act, 5 U.S.C. § 552, and acquired a confirmation by affidavit from the INS confirming that the INS never requested LCDR Verbeck's termination.

***BCCCR Decision***

51. On or about May 26, 2005, Plaintiff applied to the BCCCR for correction of her record seeking the following relief

A. The record should be corrected to establish that Verbeck was never separated.

B. Verbeck should be promoted to the rank equivalent to her contemporaries forthwith.

C. Verbeck should be fully reinstated and compensated for back pay and benefits attributable to her promoted rank.

D. Verbeck has already presented herself to the Veterans Administration who gave her a rating of 50% disability which should be applied to the benefits to be received by her at her promoted rank.

E. Verbeck should be retired at the promoted rank and be given a medical disability retirement at the maximum rate as reflected by her Veterans Administration rating.

F. Verbeck should be reimbursed for all attorneys' fees and costs relative to the wrongful separation.

G. Verbeck should be awarded punitive damages.

52. On or about March 28, 2007, the BCCCR denied the application and found in pertinent part as follows:

> "2. The application of Ms. Mary Verbeck was before the Board to determine if a material error or injustice occurred in the service records of the officer. Ms. Verbeck is requesting 1) her record be corrected to show that she was never separated 2) that she be promoted to the rank equivalent to her contemporaries; 3) she be fully reinstated and compensated for back pay and benefits attributable to her promoted rank; 4) her VA disability rating of 50% should be applied to the benefits to be received by her at her promoted rank; 5) she should be retired at the promoted rank and given a medical disability retirement at the maximum rate as reflected by her VA rating...."
>
> "3. Ms. Verbeck's first five requests appear to be properly with the Board's authority to act upon."
>
> "4. The record clearly indicates that the applicant was terminated for cause under the probationary authority. At the time that she separated, she was found fit for full duty and thus was not entitled to a disability retirement."
>
> "5. Because Ms. Verbeck's commission was properly terminated, there is no basis for her request other than her official personnel

file be corrected to show that she was never separated."

"6. Although the Department of Commissioned Personnel (DCP) has the authority to separate without cause an officer who is serving on probationary status, DCO found considerable cause to separate Ms. Verbeck. She failed to perform her duties in a manner expected of an officer in the Uniformed Service. The Director, Division of Immigration Health Service, in a letter dated April 4, 2002, requested the Director, DCP Involuntarily Separate Ms. Verbeck during the Probationary Period for reasons of unsuitability and for failure to demonstrate the level of performance, conduct and dedication to duty. The determination of unsuitability was based on behavioral issues that surfaced early in Ms. Verbeck's first assignment. The termination of failure to demonstrate the level of performance, conduct and dedication to duty expected of an officer was based on her failure to resolve health and safety issues throughout the medical unit as the infection control officer, not being receptive to supervision and difficulty in working with others. Extensive documentation submitted by the Immigration Naturalization Service (INS) clearly supports a finding that Ms. Verbeck's commission was properly terminated during the officer's probationary period."

"7. The applicant was detailed to the San Pedro California Service Procession Center, a detention center with medical facilities for the INS. The Board lacks jurisdiction over INS personnel activities. Since Ms. Verbeck was not on the rolls of a PHS agency at the time of her separation, no PHS agency has a duty to reinstate the officer and give her back pay."

. . .

"9. The applicant requested her VA disability rating be applied to the benefits received by her at the promoted rank. The applicant's record supports a conclusion by the Medical Affairs Branch (MAB) that Ms. Verbeck's request should be denied because the evidence shows that she was not unfit for continued duty at the time of her discharge. Dr. Caserta of the Medical

Affairs Branch reviewed Ms. Verbeck's application to the Board and concluded 'that although a medical condition is ratable according to the VA schedule for rating disabilities, it does not necessarily constitute a disability for which PHS retirement or separation disability benefits will be granted.' The Director, DCP in consultation with the Chief, MAB, DCP will make the final determination about the merits of a fitness for duty request. Ms. Verbeck was psychiatrically fit for duty."

. . .

"12. The Board found no merit to the claims Ms. Verbeck presented. The members discussed the evidence provided by the Immigration Naturalization Service and found no error or injustice that was made towards Ms. Verbeck. She was properly terminated under the Probationary Period. The Board therefore denies her request with prejudice."

53. The BCCCR findings of fact were in error. Verbeck was on the payroll of the PHS and was an officer with the PHS.

### *Causes of Action*

### Count I

### (Wrongful Involuntary Termination and Reprisal)

54. The averments of paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

55. PHS is an agency which is bound by federal law and its own regulations, which prohibit retaliation against officers who have filed complaints and reported violations.

56. PHS has promulgated regulations within the CCPM, Part 2, which institute EEO policies and procedures.

57. PHS regulations prohibit reprisal against those who submit an EEO complaint, 37 U.S.C. §204.

58. Defendant violated federal law when PHS retaliated against LCDR Verbeck for filing an EEO complaint; terminated her service without providing the basis for such action, and without affording her an opportunity to respond in accordance with the CCPM, which provides that Commissioned Officer Effectiveness Reports ("COER") be relied upon when evaluating officers for involuntary separation.

**Count II**

**(Wrongful Discharge–Medical Processing Required Under Federal Law)**

59. The averments of paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

60. Under Federal law, Title 10, U.S. Code, Chapter 61, and Section 221 (a)(2) of the Public Health Service Act, PHS commissioned officers are entitled to be retired and compensated for service-connected disabilities.

61. Prior to being discharged, a member of the Commissioned Corps is entitled to an on-the-record hearing under 10 U.S.C. § 1214.

62. The processing of medical disability cases is governed by the CCPM, which requires the Chief of the Medical Affairs Branch to present all evidence of a debilitating condition to a Medical Review Board ("MRB").

63. In reprisal for filing a complaint, PHS officials did not present LCDR Verbeck's case to the MRB, nor did they provide her with a required Fitness for Discharge physical in accordance with PHS regulations. Instead, without following its own regulations and considering all the medical evidence, PHS discharged LCDR Verbeck, thereby terminating her pay and allowances.

**Count III**

**(BCCCR Decision Was Arbitrary and Capricious)**

64. The averments of paragraphs 1 through 53 are incorporated by reference as if fully set forth herein.

65. The final agency decision on LCDR Verbeck's BCCCR application was arbitrary and capricious, unsupported by substantial evidence, and contrary to law because:

(a) LCDR Verbeck was retaliated against for filing an EEO complaint, and a reprisal complaint against Admiral Davidson;

(b) PHS failed to provide a factual basis in the termination letter as required by regulation for involuntary separations;

(c) LCDR Verbeck was retaliated against for reporting to her command several potential violations of unsafe labor practices as defined by OSHA;

(d) LCDR Verbeck was retaliated against for an anonymous complaint filed with OSHA by another individual;

(e) The BCCR failed to consider the fact that LCDR Verbeck requested that her termination be held in abeyance until she could be qualified for medical release; and

(f) The BCCR failed to consider the fact that, contrary to Captain Canton's assertion, the INS never requested her termination.

***Prayer***

WHEREFORE, Plaintiff prays that the Court:

(1) set aside the decision of the BCCCR as acted upon by the reviewing official;

(2) set aside her termination;

(3) enter judgment for her back pay and allowances from the time of discharge;

(4) find that LCDR Verbeck should be placed on the Temporary Disability Retired List in accordance with federal law;

(5) award Plaintiff attorney's fees and costs expended in pursuit of this

claim; and,

(6) that the Court grant such other relief as may be just and proper.

Dated: May 12, 2008

Respectfully submitted,

Steven H. Haney
Counsel of Record
Haney, Buchanan & Patterson, LLP
707 Wilshire Boulevard, 53rd Floor
Los Angeles, California 90017
(213) 228-6500 Tel
(213) 228-6501 Fax
shaney@hbplaw.com

*Attorneys for Plaintiff*