**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| MARY E. VERBECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-357 C |
| | ) | (Judge Lettow) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S STATEMENT OF FACTS**

Pursuant to Rule 52.1(b), the defendant respectfully submits the following Statement of Facts.[1]

**I. Ms. Verbeck's Service With The Commissioned Corps And Termination**

1. The plaintiff, Mary E. Verbeck, was formerly a Nurse Practitioner who the rank of Lieutenant Commander in the United States Public Health Service ("PHS") Commissioned Corps. AR 165.

2. Ms. Verbeck started her employment with the PHS on November 1, 1999. Initially, Ms. Verbeck was assigned to the PHS Division of Immigration Health Services ("DIHS") as a nurse practitioner at the Queens, New York, Immigration and Naturalization Service ("INS") Service Processing Center ("SPC"). AR 410.

3. Ms. Verbeck requested a transfer from INS SPC in Queens, New York in September 2000. AR 486. From October 2000 to June 1, 2002, Ms. Verbeck was assigned to the INS SPC in San Pedro, California. AR 410.

[1] Citations to "AR__" refer to the administrative record being filed concurrently with this submission and "Compl." refers to the plaintiff's complaint in this case.

4. On February 19, 2002, Commander Yvonne Anthony, Health Services Administrator, and Commander Kenneth Sowinski, Clinical Director, of the San Pedro SPC submitted a memorandum entitled "LCDR [(Lieutenant Commander)] Verbeck / Suitability for Continued Presence in the Facility," to Commander Phil Jarres, Acting Chief of Field Operations. See AR 369-370. The memorandum outlined the reasons why they considered Ms. Verbeck's continued presence in the facility to be detrimental to the functioning, productivity, and staff morale of the facility. Id. In particular, the memorandum noted that within four months of her arrival at the San Pedro SPC, Ms. Verbeck required verbal counseling, and that even after verbal counseling, Ms. Verbeck's adverse "behaviors have surpassed previous levels." Id.

5. On February 19, 2002, Ms. Verbeck filed complaint CC-02-02 alleging discrimination based upon her purported mental disability and prior Equal Employment Opportunity ("EEO") activity. AR 614, 685. See AR 628-633. The agency accepted the complaint and identified the claims in its correspondence on February 25, 2002. AR 614, 685, 687-688.

6. Commander Anthony placed Ms. Verbeck upon nonduty with pay status beginning February 20, 2002, for a period not to exceed 60 days, unless extended, pending receipt of a second opinion evaluation by the PHS Medical Affairs Branch. AR 396-397.

7. Commander Anthony directed Ms. Verbeck to remain on nonduty with pay status on March 21, 2002, pending an administrative investigation. AR 398-399.

8. On April 4, 2002, Dr. Eugene Migliaccio, Director of the DIHS sent a request for involuntary separation of Ms. Verbeck during her probationary period. See AR 338-339. The reasons for the request included a determination of unsuitability based upon emotional issues that surfaced early in her first assignment to the Queens, New York SPC, then resurfaced within three

months of her arrival at her assignment to the San Pedro, California SPC and continued to escalate over time. AR 338-339. In addition, Dr. Migliaccio based the request upon Ms. Verbeck's failure to demonstrate the level of performance, conduct and dedication to duty expected of an officer of the Uniformed Services, including being unreceptive to supervision and difficulty working with others. AR 339.

9. On May 1, 2002, Captain Denise Canton, acting upon behalf of Rear Admiral R. Michael Davidson, Director of the Division of Commissioned Personnel ("DCP"), notified Ms. Verbeck that her commission was being terminated during her probationary period. AR 405-406. The notice informed Ms. Verbeck that she was being separated because of her lack of suitability for continued service, and a lack of the professional attitude and attributes expected of an officer. Id. Her termination became effective on June 1, 2002. Id. See also AR 407 (termination).

10. On May 3, 2002, Ms. Verbeck filed a second discrimination complaint, CC-05-02, asserting that the termination letter was issued in reprisal for her filing her prior discrimination complaint, CC-02-02. AR 444-446.

11. During the investigation of complaint CC-05-02, Mr. Sowinski stated he had supervisory authority over clinical aspects of Ms. Verbeck's job. AR 499-500. Mr. Sowinski stated he had no problems with Ms. Verbeck's clinical abilities, however, Ms. Verbeck had a problem dealing with supervisors and co-workers, as detailed in the February 19, 2002, memorandum prepared by Commander Anthony. AR 500. He also informed the EEO investigator that he believed Ms. Verbeck's continued presence at the facility was detrimental to productivity and staff morale. Id. He indicated that he did not believe Ms. Verbeck was

discriminated against, or that her termination had anything to do with her filing an EEO complaint. AR 501.

12. During the EEO investigation, Commander Anthony stated that Ms. Verbeck's job performance was good, but she was very disruptive, and constantly challenged management's authority. AR 490. Commander Anthony stated that Ms. Verbeck was not receptive to counseling and would become immediately defensive. AR 491. Commander Anthony indicated that her recommendation for termination had nothing to do with Ms. Verbeck's prior EEO complaint. Id.

13. Capt. Migliaccio attested that Commander Anthony and Mr. Sowinski, Ms. Verbeck's immediate supervisors, recommended she be terminated because her presence was detrimental to productivity and staff morale. See AR 485-487. Capt. Migliaccio stated he based his decision to request her termination upon the documentation he reviewed concerning Ms. Verbeck's conduct, and her prior EEO activity had no bearing upon his decision because he was not aware of it. AR 486.

14. Commander Cheryl Chapman, Adverse Actions Officer, DCP, PHS, Rockville, Maryland, was also interviewed in connection with complaint CC-05-02. See AR 494-497. Commander Chapman stated she reviewed the action submitted by the Capt. Migliaccio requesting Ms. Verbeck's termination to ensure it was in compliance with the applicable regulations. AR 495. Commander Chapman also stated that Commander Anthony informed her that she attempted to counsel Ms. Verbeck about her failure to adhere to conduct expected of an officer in a uniformed service, but Ms. Verbeck had not improved her behavior. AR 496. In her affidavit, Commander Chapman testified that a Reserve Corps officer may be terminated during

his or her three-year probationary period with or without cause, and in this case, there was cause to terminate Ms. Verbeck. AR 495, 496-497. Commander Chapman indicated she was interviewed during Ms. Verbeck's prior EEO complaint, however, Ms. Verbeck's prior EEO activity was not a factor in the determination to terminate her commission. AR 494, 497.

15. In connection with complaint CC-05-02, Capt. Canton, Executive Officer, DCP, stated that the agency requested Ms. Verbeck's termination based upon misconduct and performance issues, and as Acting Director she reviewed the materials and signed the May 1, 2002 letter of termination. See AR 481-483. Although Capt. Canton was aware of Ms. Verbeck's prior EEO complaint at the time she signed the letter terminating her commission, she stated that the prior complaint had nothing to do with the termination. AR 481, 483.

16. All Reserve Corps officers with the PHS Commissioned Corps are required to serve a 3-year probationary period. eCCIS CC43.7.1 § (D)(1) (Def. App. 18) ("A reserve corps officer will serve a probationary period consisting of the first 3 years of any tour of active duty"), CC23.7.1 § (D)(1) (Def. App. 2) ("All individuals called to active service in the PHS reserve corps are required to serve a 3-year probationary period.").[2] The commission of a Reserve Corps officer may be terminated with or without cause at any time during the 3-year probationary period. eCCIS CC43.7.1 § (D)(1) (Def. App. 18) ("The commission of any reserve office on active duty may be terminated without cause at any time during the 3-year probationary period"), CC23.7.1 § (D)(1) (Def. App. 2).

---

[2] The Electronic Commissioned Corps Issuance System is publicly available online at http://dcp.psc.gov/eccis/. For the Court's convenience, we have appended a copy of the pertinent provisions to our concurrently filed motion to dismiss or, in the alternative motion for judgment upon the administrative record. "Def. App. __" refers to a page in the appendix attached to our motion.

17. A probationary officer can be involuntary separated due to unsuitability, i.e., "the officer demonstrates general character traits that make him/her unsuitable for continued service." eCCIS CC23.7.1 § (D)(1)(b) (Def. App. 2). See also AR 482.

18. An officer who is involuntarily separated during the probationary period "is not entitled to a review by a board of officers." eCCIS CC23.7.1 § (D)(4) (Def. App. 3).

## II. Ms. Verbeck's Fitness for Duty

19. On September 4, 2001, Ms. Verbeck was diagnosed with breast cancer; she underwent surgery for the condition on September 19, 2001. A second surgery was performed on January 4, 2002. Compl. ¶ 24, 26; AR 697.

20. Ms. Verbeck alleges that while she was at work, on January 18, 2002, a detainee attempted to strangle her. See AR 349. On February 6, 2002, Ms. Verbeck purportedly received a letter from another detainee that she believed was threatening her. Id. As a result of these two incidents, on February 6, 2002, Ms. Verbeck wrote a memorandum to her immediate supervisor, Commander Anthony, requesting that the assault be documented in the Department of Labor, Office of Occupational and Safety and Health Administration ("OSHA") log and included in her official personnel folder. Id. See Compl. ¶ 26-28.

21. On February 7, 2002, Ms. Verbeck did not report to work and submitted a slip from her physician asking that her absence for that day be excused. The physician evaluated Ms. Verbeck, by telephone, and stated that she was having "major depression with acute exacerbation, secondary to workplace harassment." AR 391.

22. On February 11, 2002, Commander Anthony responded to Ms. Verbeck's February 6, 2002 letter. AR 350. Commander Anthony advised Ms. Verbeck that she had not followed

established procedure with respect to immediately notifying the safety officer about the incident and, therefore, the incident could not be included in the OSHA log. Id. Nevertheless, Commander Anthony also stated that she appreciated Ms. Verbeck's concerns regarding OSHA standards, and requested further information from her. AR 358.

23. Commander Alysse Gordon, Assistant Health Services Administrator, investigated Ms. Verbeck's OSHA claims and in a memorandum, dated February 11, 2002, concluded that the agency was in compliance with required OSHA standards. AR 232-239, 360-367.

24. On February 12, 2002, Ms. Verbeck did not report to work and submitted a slip from her physician asking that her absence for that day be excused. The physician evaluated Ms. Verbeck, again via telephone, and diagnosed her as having "major depression exacerbated by workplace stress/harassment." AR 392.

25. On February 13, 2002, Captain Ada Rivera, Medical Director, DIHS, sent a memorandum for Lt. Commander Sowinski, expressing concern that Ms. Verbeck appeared to have been diagnosed with Major Depression by telephone, without formal evaluation or treatment. AR 394. Capt. Rivera recommended a mental health evaluation of Ms. Verbeck to "address her symptoms, diagnosis, and treatment plan." Id. Capt. Rivera also opined that Ms. Verbeck "should not be allowed to see patients or should be monitored closely" until such evaluation was completed. Id.

26. On February 14, 2002, Ms. Verbeck was notified by Commander Anthony that she would not be allowed back to work until she provided a doctor's release to full duty resulting from an in-person consultation. AR 699, 701. Commander Anthony notified Ms. Verbeck that the medical report from her doctor requesting her excused absence was not acceptable because

the medical provider had made the assessment over the telephone. AR 701. Commander Anthony stated that she was concerned that Ms. Verbeck might not be getting appropriate care because major stress is a serious illness and it appeared inappropriate to treat it via telephone. Id. Commander Anthony placed Ms. Verbeck upon paid leave until she obtained a medical release after a physical examination. Id. Commander Anthony also changed Ms. Verbeck's night shift to the day shift in order to more closely monitor the situation. Id.

27. Ms. Verbeck saw the physician on February 15, 2002, and the doctor determined that she could return to full duty, although she still suffered from major depression. AR 393.

28. On February 15, 2002, Captain David G. Hooper, Senior Medical Evaluations Officer for DCP's Medical Affairs Branch, asked Ms. Verbeck to authorize release of her health care records for the last three years. AR 241. He further advised that the Medical Affairs Branch would review the requested records to "determine the gravity of [her] medical situation and prognosis for the continuation of full duties." Id. See also AR 706-708 (affidavit of Capt. Hooper).

29. On February 18, 2002, Ms. Verbeck alleges that she sent OSHA the list of purported violations of OSHA standards she had brought to management's attention on February 6, 2002. AR 695. But see AR 806-820 (providing that Ms. Verbeck's OSHA compliant was received by OSHA on March 4, 2002).

30. On February 19, 2002, Ms. Verbeck was allowed to return to work after she provided a release to full duty following an in-person consultation with her physician. AR 629, 695.

31. On February 20, 2002, Commander Anthony ordered Ms. Verbeck to cooperate with the Medical Affairs Branch in obtaining a second opinion evaluation of her illnesses of February

7 and February 12, 2002. AR 243, 395. See also AR 629, 695. On that same date, Commander Anthony placed Ms. Verbeck upon nonduty with pay status for 60 days pending receipt of the second opinion evaluation by the Medical Affairs Branch. AR 396-397. See also AR 400.

32. On February 25, 2002, the Health Resources and Services Administration's Office of Equal Opportunity & Civil Rights ("OEOCR"), Rockville, Maryland, acknowledged receipt of Ms. Verbeck's EEO complaint CC-02-02, filed February 19, 2002. AR 685. The complaint alleged that Commander Anthony's order that she obtain a doctor's release before returning to duty constituted discrimination upon the basis of a perceived physical or mental disability. AR 687. Ms. Verbeck further alleged that placing her upon "Non-duty With Pay Status" for 60 days pending a second medical evaluation was an act of retaliation based upon her filing an EEO complaint and the OSHA report. Id. Finally, Ms. Verbeck alleged that management acted in a malicious and inappropriate manner by releasing information to about her work history and perceived mental disability from her previous assignment in Queens, New York and her current assignment in San Pedro, California. Id.

33. In the affidavit she signed during the investigation of complaint CC-02-02, Commander Anthony stated that neither Ms. Verbeck's EEO complaint nor her notification to OSHA of possible existing violations at the facility led to her assignment to 60 days "Non-duty With Pay Status." AR 703. Ms. Verbeck had not notified Commander Anthony that she had filed her formal EEO complaint, which she filed directly with HRSA's OEOCR in Rockville, Maryland. Id. Commander Anthony also stated that the second opinion was requested to ensure that Ms. Verbeck received appropriate care and did not injure or harm herself while she recovered from her surgeries and the diagnosis of major depression. AR 701-703.

34. On or about February 27, 2008, Dr. Kathleen Frechen sent a letter to Capt. Hooper. AR 249. In the letter, Dr. Frechen asserts that Ms. Verbeck "has been in treatment with me since November 9, 2001 for Major Depression, single episode." Id. Dr. Frechen further opined that Ms. Verbeck "is considered fit for duty." Id.

35. On March 7, 2002, Ms. Verbeck's second opinion psychiatric evaluation found her psychiatrically fit for duty. AR 189-191 (stating that Ms. Verbeck "is considered psychiatrically fit for full duty.").

36. In her affidavit for complaint CC-02-02, Ms. Verbeck stated that she does not have a qualifying disability under the Americans with Disabilities Act and that she is able to perform all the functions of her position without any accommodation. AR 696.

## III. Procedural History

37. On April 9, 2003, Ms. Verbeck filed a complaint with this Court, No. 03-725C, alleging: (1) she was wrongfully terminated in retaliation for filing an EEO complaint; (2) she was wrongfully withheld disability retirement benefits; and (3) she was wrongfully withheld promotion. Ms. Verbeck failed to file an application with the Board for Correction of PHS Commissioned Corps Records ("BCCCR") before filing her complaint with this Court. See Verbeck v. United States, Fed. Cl. No. 03-725 (2003).

38. On June 4, 2003, the Office of Equal Opportunity and Civil Rights ("OEOCR") issued a recommended decision regarding Ms. Verbeck's EEO complaint CC-02-02, filed February 19, 2002, that stated "based on the evidence presented, the allegations of discrimination are not sustained." AR 830-839. The Surgeon General's final decision, dated December 23, 2003, concurred with the recommended decision. AR 840-841.

39. On September 30, 2003, OEOCR issued a recommended decision in complaint CC-05-02. AR 608-612. The recommended decision found that Ms. Verbeck's allegations failed to establish that her termination was due to unlawful retaliation. Id. The Surgeon General's final decision concurred with the recommended decision. AR 613-614.

40. On January 9, 2004, the parties filed a joint stipulation of dismissal with this Court in case No. 03-725C, pursuant to Rule 41(a)(1)(ii). See Verbeck v. United States, Fed. Cl. No. 03-725 (2003).

41. On May 27, 2005, Ms. Verbeck filed an application with the BCCCR. See AR 1-294. In her application, Ms. Verbeck argued that she should not have been terminated during her probationary period. Id. Specifically, she asserted that her termination was in reprisal for filing EEO and other complaints. AR 279-284. She further claimed that she was entitled to a separation based upon her disability. AR 276-290. She also alleged that the PHS unlawfully denied her a promotion for which she was recommended. AR 290-292. Ms. Verbeck sought the following relief: (1) a correction of the record to establish that she was never separated; (2) a promotion to the rank equivalent to her contemporaries; (3) reinstatement and full compensation for back pay and benefits associated with her promoted rank; (4) application of her 50% disability rating from the Veterans Administration to the benefits to be received as a result of her promoted rank; (5) retirement at her promotion rank and a medical disability retirement at the maximum rate; (6) reimbursement for all attorneys' fees and costs relative to the wrongful separation; and (7) punitive damages. AR 276.

42. On September 22, 2005, Captain Vito Caserta, Senior Medical Evaluations Officer for the Medical Affairs Branch, prepared a memorandum to the Director of the Office of

Commissioned Corps Operations ("OCCO") noting that he reviewed Ms. Verbeck's application to the BCCCR, and based upon the record, he found that Ms. Verbeck was "fit for duty at the time of her termination" on June 1, 2002. AR 403. Capt. Caserta noted that the Corps' guidance, CCPM Pamphlet No. 47 (updated July 1999) provides that although a medical condition is ratable according to the VA schedule for rating disabilities (VASRD), "it does not necessarily constitute a disability for which PHS retirement or separation disability benefits will be granted." Id. Capt. Caserta also agreed that the determination that the officer was fit for duty was reasonable and the determination that her case did not merit a review and determination by a Medical Review Board was reasonable and correct. Id.

43. On February 22, 2006, Capt. Canton, then-Director of the OCCO, submitted an advisory opinion to the BCCCR regarding Ms. Verbeck's application. AR 329-337. Capt. Canton recommended that the application be denied upon the merits due to insufficient "relevant evidence to demonstrate the existence of a probable material error or injustice." AR 336.

44. The BCCCR convened on February 9, 2007 in Rockville, Maryland, to review Ms. Verbeck's application. AR 427.

45. On or about March 28, 2007, the BCCCR recommended denial of Ms. Verbeck's application for correction of her records. AR 431-433. The BCCCR determined that Ms. Verbeck's termination during her probationary period was proper; therefore "there is no basis for her request that her official personnel file be corrected to show that she was never separated." AR 432. Regarding Ms. Verbeck's promotion request, the BCCCR concluded that "[i]t is speculation if Ms. Verbeck would have been promoted by a future promotion had she remained on active service with the PHS." Id. As for Ms. Verbeck's request that her VA

disability rating be applied to the benefits received at her promoted rank and that she receive a medical disability retirement, the BCCCR found that the evidence shows that she was not unfit at the time of her separation. Id. Finally, the BCCCR determined that Ms. Verbeck's request for reimbursement of attorney's fees and punitive damages lay beyond the BCCCR's legal authority. AR 433. The Deputy Assistant Secretary for Program Support concurred with the BCCCR's recommendation that Ms. Verbeck's application be denied. Id.; Compl. ¶52.

46. On May 19, 2008, plaintiff filed a complaint with this Court claiming (1) she was wrongfully terminated and her termination was the result of reprisal; (2) she was improperly discharged without receiving a fitness for discharge physical prior to her termination; and (3) the decision by the BCCCR was arbitrary and capricious. See Compl.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

OF COUNSEL:
LISA M. FLYNN
Assistant Regional Counsel
Office of General Counsel, Region X
U.S. Department of Health and
Human Services

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

September 9, 2008

Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of September, 2008, a copy of the foregoing "DEFENDANT'S STATEMENT OF FACTS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice