# In the United States Court of Federal Claims

No.  08-357C

(Filed: September 11, 2014)

| | |
|---|---|
| **MARY E. VERBECK,** | ) Wrongful termination claim by former |
| | ) Lieutenant Commander in the Public |
| **Plaintiff,** | ) Health Service Commissioned Corps; |
| | ) termination set aside; determination of |
| **v.** | ) back pay and allowances due; 37 U.S.C. |
| | ) § 204; reinstatement; final judgment |
| **UNITED STATES,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

_____

Steven Harold Haney, Haney Law Group, Los Angeles, CA, for plaintiff.

Steven Michael Mager, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs were Stuart F. Delery, Assistant Attorney General, Civil Division, and Robert E. Kirshman, Jr., Director, and Bryant G. Snee, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel was Lisa M. McGinnis, Assistant Regional Counsel, Office of General Counsel, Region X, United States Department of Health and Human Services.

**OPINION AND ORDER**

LETTOW, Judge.

This wrongful termination case has a long history, stemming from a dismissal of plaintiff, former Lieutenant Commander Mary Verbeck, from her post as a nurse practitioner in the Public Health Service ("PHS") Commissioned Corps in June of 2002.  For the past twelve years, Ms. Verbeck and the government have engaged in legal proceedings at the administrative level and in this court.  On July 23, 2013, after two remands, the court granted Ms. Verbeck judgment on the administrative record, setting aside her termination, preparing to order her reinstatement, and remitting the case for a third time to the Secretary of Health and Human Services for the purpose of calculating back pay and allowances owed through July 2013 to Ms. Verbeck.  PHS's decision on the third remand proved to be incomplete and unsatisfactory to all parties, and a fourth remand was ordered on January 15, 2014.  On April 30, 2014, PHS completed its proceedings on the fourth remand, determining that through December 31, 2013, Ms. Verbeck was due $89,846.95, taking into account substantial offsets attributable to her civilian

employment.  Unsatisfied with the decision on remand, Ms. Verbeck invoked Rule 52.2(f) of the Rules of the Court of Federal Claims ("RCFC") to contest the agency's determination of back pay and allowances due.[1]  The case then entered its final stage.  The administrative record attendant to the fourth remand has been filed, and the parties have submitted cross-motions for judgment on the administrative record regarding back pay and allowances.  A hearing was conducted on August 15, 2014.

## FACTS[2]

Ms. Verbeck served as an officer in the United States Department of the Navy, but in November 1999, she transferred to the PHS Commissioned Corps to serve as a nurse practitioner with the rank of Lieutenant Commander.  *See Verbeck v. United States ("Verbeck I")*, 89 Fed. Cl. 47, 51 (2009).  PHS placed her at an Immigration and Naturalization Service ("INS") facility located in Queens, New York, and in October 2000, upon her request, she was transferred to the INS center in San Padro, California.  *See Verbeck v. United States ("Verbeck II")*, 97 Fed. Cl. 443, 446 (2011).  During 2000 and 2001, reports of her performance, prepared by her superior officers, reflected an overwhelmingly positive view of Ms. Verbeck's work.  *See Verbeck v. United States ("Verbeck III")*, 111 Fed. Cl. 744, 747 (2013).  In the fall of 2001, Ms. Verbeck underwent treatment for breast cancer, including two major surgeries.  *Id.*  Attendant to her treatment, she began to suffer severe depression, which was aggravated by a post-surgical infection and two incidents at work during which she felt her safety was threatened.  *Id.*  Over the next several months, after Ms. Verbeck's superiors became concerned with her fitness, Ms. Verbeck was placed on paid leave, and controversy arose between Ms. Verbeck and her superiors while physicians assessed whether she was fit for duty.  *Id.* at 747-48.  Although her personal physician and two other physicians noted her fitness for duty, PHS proceeded with terminating her commission.  *Id.*  She was discharged on June 1, 2002.  *Id.*

After termination, Ms. Verbeck gained employment as a civilian nurse in 2003 and moved to San Diego, California, for that position.  Pl.'s Mot. for Judgment on the Administrative Record ("Pl's Mot.") at 30, ECF No. 165.  As part of her relocation to San Diego, she sold her condominium for a loss and incurred moving costs.  *Id.*  She has earned civilian pay as a nurse since 2003, with generally increasing income over the decade.  *Id.* at 33.

Ms. Verbeck filed the current suit in this court after unsuccessfully pursing administrative remedies.  *Verbeck III*, 111 Fed. Cl. at 748.[3]  In an initial decision, the court, on August 27, 2009,

---

[1]RCFC 52.2(f) addresses post-remand proceedings, and allows a party to file and serve a notice stating "whether the final decision or other action on remand affords a satisfactory basis for disposition of the case."  RCFC 52.2(f)(1)(A).  If such a notice is filed, the court enters an order prescribing the procedure to be followed in contesting the administrative action taken on the remand.  RCFC 52.2(f)(2).

[2]The recitation of facts is drawn from the administrative record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005) ("[T]he [c]ourt . . . is required to make factual findings under [what is now RCFC 52.1] from the record evidence as if it were conducting a trial on the record.").

vacated a decision by the Board for Correction of PHS Commissioned Corps Records ("PHS Correction Board" or "Board") upholding Ms. Verbeck's termination and remanded the case to the Board for consideration whether Ms. Verbeck's termination was appropriate and whether she should have been given a severance payment based upon disability. *Verbeck I*, 89 Fed. Cl. at 70. After the Board reaffirmed its prior decision that Ms. Verbeck's commission was properly terminated, the court on review vacated that decision and remanded to the Board a second time to consider additional factual questions. *Verbeck II*, 97 Fed. Cl. at 446, 460. Again, the Board re-affirmed its prior decisions that Ms. Verbeck's separation was properly executed. *Verbeck III*, 111 Fed. Cl. at 749. Ms. Verbeck challenged the Board's decision on the second remand, and the court subsequently determined that PHS's termination of Ms. Verbeck's commission was improper, ruling in favor of Ms. Verbeck on the merits and remitting the matter to the Secretary of Health and Human Services for a determination of back pay and allowances due to Ms. Verbeck. *Id.* at 754. Subsequently, upon the government's motion, the court formally remanded the case to the Secretary, solely for the calculation of back pay and allowances owed to Ms. Verbeck. Order of Sept. 5, 2013, ECF No. 135. The PHS Correction Board, acting for the Secretary, rendered a calculation of back pay and allowances on December 4, 2013, which was incomplete. *See* Pl.'s Resp. to Notice by the United States, Dec. 4, 2013, ECF No. 141. The court then ordered a fourth remand to the Secretary of Health and Human Services and "specif[ied] in detail the matters that [had to] be addressed by the Department to provide an adequate basis for final judgment to be entered." Order for Fourth Remand, Jan. 15, 2014, ECF No. 147. Again acting on behalf of the Secretary, the PHS Correction Board on April 30, 2014, rendered a final determination of pay and allowances due through December 31, 2013, determining that the total back pay and allowances due Ms. Verbeck was $89,846.95. Decision on Remand at 10 (Apr. 30, 2014), ECF No. 156.[4] Ms. Verbeck accepted the Board's decision as to back pay, cost of living allowance, basic housing allowance, and subsistence allowance. Pl.'s Opp'n to Def.'s Cross-Mot. for Judgment on the Administrative Record & Reply to Def.'s Opp'n to Pl.'s Mot. for Judgment on the Administrative Record ("Pl.'s Opp'n") at 1-2, ECF No. 167.[5] Ms. Verbeck contested the Board's decision as to the remaining calculations of amounts due, and the parties and the court moved forward with further proceedings on the disputed issues. *See* Scheduling Order of May 9, 2014, ECF No. 160.

---

[3]Ms. Verbeck's original complaint included a claim of retaliatory termination based upon whistleblower complaints she filed while at PHS. *Verbeck II*, 97 Fed. Cl. at 449. The court dismissed this claim because the whistleblower statute does not protect members of the PHS Commissioned Corps. *Id.*

[4]The amount calculated by the Board to be due took account of an offset of $1,196,993.94, for Ms. Verbeck's civilian income. Decision on Remand at 10. The Board determined that the amount due without including the offset would be $1,286,840.89. *Id.*

[5]The Board's calculations reflected $888,281.65 for back pay owed, $20,602.33 for a cost of living allowance, $320,135.40 for basic allowance for housing, and $28,301.72 for basic allowance for subsistence. Decision on Remand at 1, 3-4. Considering just these agreed elements, the total amount due before offset was accordingly $1,257,321.10.

**STANDARD FOR DECISION**

RCFC 52.1(c) governs the parties' cross-motions for judgment upon the administrative record.  In adopting RCFC 52.1, the Court's Rules Committee noted that "[t]he standards and criteria governing the court's review of agency decisions vary depending upon the specific law to be applied in particular cases.  [RCFC 52.1] does not address those standards or criteria."  RCFC 52.1, rules committee note (2006).  For these motions, Ms. Verbeck bears the burden to prove through the administrative record that the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence.  *Verbeck III*, 111 Fed. Cl. at 749; *see also Cronin v. United States*, __ F.3d __, __, 2014 WL 4235317, at *3 (Fed. Cir. 2014);  *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005).  In accord with this standard, the court does not reweigh the evidence but considers whether the Board's conclusion is supported by substantial evidence.  *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983).  As long as the Board's action comported with the procedural standards mandated by statute or regulation, considered the relevant evidence, and reached a reasonable conclusion, the court will not disturb the Board's decision.  *Melendez Camilo v. United States*, 642 F.3d 1040, 1045 (Fed. Cir. 2011); *Helferty v. United States*, 113 Fed. Cl. 308, 316 (2013).

**ANALYSIS**

Ms. Verbeck brought her claims jurisdictionally under the Tucker Act, 28 U.S.C. § 1491(a), and substantively under the Military Pay Act, 37 U.S.C. § 204.  *See Verbeck I*, 89 Fed. Cl. at 59-60.  The Military Pay Act provides that members of the uniformed services are entitled to pay and allowances specified by law or regulation for the pay grade to which assigned.  37 U.S.C. § 204(a), (g), (h), (i).  The PHS Correction Board endeavored to follow the mandate of the Military Pay Act and the statute applicable to military correction boards, 10 U.S.C. § 1552, in its determinations on the fourth remand.[6]

---

[6]As noted in *Verbeck I*,

> [b]y statute, Congress has sought to extend many of the benefits that members of the armed forces receive to PHS' Commissioned Corps. 42 U.S.C. § 213a.  Section 213(a) provides that "[c]ommissioned officers of the Service . . . are entitled to all the rights, benefits, privileges, and immunities now or hereafter provided for commissioned officers of the Army . . . under the . . . provisions of Title 10" that are identified in the statutory text.  42 U.S.C. § 213a(a).  For the purposes of Ms. Verbeck's case the most pertinent provisions of Title 10 that are made applicable to PHS' Commissioned Corps officers . . . [include] "Section 1552, Correction of military records: claims incident thereto" . . . .  42 U.S.C. § 231a(a) . . . (12).

89 Fed. Cl. at 60.

*A. Specialty Pay*

As part of its decision on remand, the Board found Ms. Verbeck eligible for specialty pay totaling $26,493.76.  Decision on Remand at 2-3.  The Board based this amount on the specialty pay rate for Non-Physician Board Certification Pay, governed by 37 U.S.C. § 302c(d), and her Creditable Service Entry Date ("Entry Date") of November 1, 1999, the time she joined PHS. *Id.*; *see* Def.'s Cross-Motion for Judgment Upon the Administrative Record & Resp. to Pl.'s Mot. for Judgment on the Administrative Record ("Def.'s Cross-Mot.") at 9, ECF No. 166. Ms. Verbeck disagrees with the Board's calculation, asserting she is due specialty pay of $66,913.27.  Pl.'s Mot. at 21-23.  She contends that the Board applied the wrong specialty pay rate and used the wrong Entry Date.  *Id.* at 22-23; *see* Def.'s Cross-Mot. at 9-10.

In support of her contention on the rate of specialty pay, Ms. Verbeck points to a governmental pay schedule labeled "Special Pays for Health Professional Officers," which specifies that qualifying personnel, *i.e.*, medical and dental officers with a pay grade over "18," receive an additional $500.00 a month in specialty pay.  Pl.'s Mot. at 23 (citing AR4-291).[7]  The government replies that this table is not applicable to Ms. Verbeck because she is not a medical officer, *i.e.*, a physician or dentist, but rather is a nurse officer.  Def.'s Cross-Mot. at 10.  Instead, the government contends that the proper specialty rate is found in 37 U.S.C. § 302c(d).  *Id.* at 9.[8] This provision provides specialty pay for "[n]onphysician health care providers" including "an officer in the Regular or Reserve Corps of the Public Health Service" who "is a health care provider," "has a post[-]baccalaureate degree," and "is certified by a professional board in the officer's specialty."  37 U.S.C. § 302c(d).  The court concurs with the government that the Board used the proper schedule and rate in its calculation of specialty pay for Ms. Verbeck.

Ms. Verbeck also argues that her Entry Date should have been adjusted to take into account her service in the Navy, which began in 1987.  Pl.'s Mot. at 23.[9]  That adjustment would

---

[7]In the original round of proceedings, an administrative record was filed in accordance with RCFC 52.1(a).  "AR __" refers to the administrative record first filed with the court.  A second administrative record was filed on June 4, 2010, respecting the Board's proceedings after the first remand.  References to the administrative record of the first remand proceedings are to "AR2-__."  A third administrative record was filed on August 27, 2012, following the Board's proceedings on the second remand.  References to the administrative record of the second remand proceedings are to "AR3-__."  A fourth administrative record was certified on May 30, 2014, following the Board's proceedings on the third and fourth remand.  References to the administrative record of those remand proceedings are to "AR4-__."

   The administrative record of the third and fourth remand proceedings is organized into tabs, but the pages are sequentially paginated.  The tabs will be ignored in citations to this record.

[8]Subsection 302c(d) of Title 37 is specifically applicable both to officers serving in the military and to "officer[s] in the Regular or Reserve Corps of the Public Health Service."  39 U.S.C. § 302c(d).

[9]Ms. Verbeck's opposition to defendant's cross-motion states that "she is entitled to specialty pay from the June 1, 2002 date she entered the United States Navy."  Pl.'s Opp'n at 17.

have meant that Ms. Verbeck would have been entitled to an additional twelve years of creditable service.  Pl.'s Mot. at 23.  Ms. Verbeck cites to the Commissioned Corps Personnel Manual, Part 2, Chapter CC22, Subchapter CC22.2, Personnel Instruction 14, Section C, Paragraph 8, entitled "Creditable Service," which means:

> For purposes of determining the rates of special pay, all periods of active service in the Uniformed Services *after the officer was qualified in the nursing specialty* for which Nonphysician Board Certified Pay (NPBCP) is being received.

Pl.'s Opp'n at 17 (citing Def.'s Mot., App. 1, ECF No. 166-2).  The government argues that prior to November 1999, Ms. Verbeck was not entitled to specialty pay because she had not completed the requisite board certification in her specialty, being ineligible because she did not receive her post-baccalaureate degree until May 1999.  Def.'s Cross-Mot. at 9.  The record does not show when Ms. Verbeck became board certified, but she would not have been entitled to specialty pay prior to May 1999 when she received her post-baccalaureate degree.  While Ms. Verbeck may have become board certified between May and November, she has not presented evidence to that effect.  As it stands, the court cannot say the Board's determination that Ms. Verbeck's Entry Date, based upon the beginning of her employment with PHS, is not based upon substantial evidence.

The court accordingly concludes that the Board was correct in determining that Ms Verbeck is due specialty pay of $26,493.76.

### B. Medical & Dental Expenses

The Board determined that Ms. Verbeck was entitled to $1,258.67 in medical expenses and no money for dental expenses.  Decision on Remand at 4-5.  The Board opined that it could only compensate Ms. Verbeck for actual health care expenses paid during the period she worked as a civilian nurse, and it found that documentary evidence of actual costs was largely missing.  *Id.*  Contrastingly, Ms. Verbeck contends that she should receive $65,021.70 for health insurance and $13,261.02 for dental insurance.  Pl.'s Mot. at 10, 14.  She argues that she should receive the full value of medical coverage, considered by the government to be $5,615.00 a year, that she would have received as a member of the PHS Commissioned Corps.  Pl.'s Mot. at 12.

Ms. Verbeck has failed to provide any persuasive support for the proposition that she should be allowed to recover insurance costs based upon the government's valuation of health insurance offered to service members.[10]  On the other hand, there is binding precedent that health

---

This appears to be an error because she was not serving with the Navy in 2002.  The court will rely on her initial brief, which specifies that Ms. Verbeck's naval service began in 1987 and that date is the one she avers should be her Entry Date.

[10]Ms. Verbeck argues that the Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119, codified at 26 U.S.C. § 5000A (entitled "Requirement to maintain minimum essential coverage"), requires her to have health insurance, and therefore she should be permitted to recover her health insurance cost at the valuation of the coverage provided serving in the PHS

expenses actually paid are compensable.  *See Gearinger v. United States*, 412 F.2d 862, 866 (Ct. Cl. 1969) (providing for an award of medical expenses actually paid, which were "adequately shown . . . by [the former service member's] testimony"). Therefore, the court will accept that Ms. Verbeck may recover medical and dental expenses for which she paid.

Ms. Verbeck calculates her personal expenditure on health insurance since her separation as amounting to $25,765.50.  Pl.'s Mot. at 13-14.  The government agrees that Ms. Verbeck is entitled to expenses actually paid but points out that Ms. Verbeck only provided documentation of her health insurance premiums for the first half of 2013, which in the government's view is insufficient evidence of her premiums for other years.  Def.'s Cross-Mot. at 19-21.  Ms. Verbeck provided documentation for health insurance premiums paid from January 1, 2013 to July 31, 2013 – which total $1,258.67.  Pl.'s Mot. at 13; *see also* AR4-50 (Ms. Verbeck's Statement of Earnings from January 1, 2014 to July 31, 2014).  For health coverage, she has contended, both now and previously before the Board, that she paid $89.00 bi-weekly, deducted from her earnings, from June 1, 2002 through December 31, 2013.  Pl.'s Mot. at 13.  She also provided a signed declaration stating that she paid $43.87 bi-weekly for dental insurance, Pl.'s Mot. at 14; *see* Decl. of Mary E. Verbeck (Jan. 3, 2014), ¶ 17, ECF No. 144, at 17, but submitted no additional documentation supporting this contention.  The government argues that the Board did not err in rejecting her calculations because she did not provide additional, corroborating evidence.  Def.'s Cross-Mot. at 20; *see also* Decision on Remand at 4-5.  However, in *Gearinger*, testimony as to medical expenses paid was held to be sufficient evidence to warrant damages.  *See* 412 F.2d at 866; *see also Dilley v. Alexander*, 627 F.2d. 407, 414 (D.C. Cir. 1980) (approving "reimbursement for all pay and allowances that [claimants] would have received but for their illegal separation, to the extent that such sums can be calculated with a reasonable degree of certainty").  The costs Ms. Verbeck claims for medical and dental insurance coverage are supported and reasonable, and she should be permitted to recover them.

### C.  California State Income Tax

The Board determined that it was not authorized to reimburse Ms. Verbeck for state income taxes paid.  Decision on Remand at 7.[11]  Ms. Verbeck argues that she should be entitled to recover $65,757.00 that she paid to the State of California as income tax.  Pl.'s Opp'n at 3.  Ms. Verbeck entered service from Florida, which does not levy income tax.  Def.'s Reply at 6.  Therefore, while she was with the Navy and PHS Commissioned Corps, Ms. Verbeck retained her Florida residence and paid no state income tax.  Def.'s Reply at 6.  After her termination, however, she found employment in California and became a resident of California, paying

---

Commissioned Corps, rather than merely her out-of-pocket costs.  Pl.'s Opp'n at 12.  As the government points out, this argument is not relevant to the case at hand because the law was not in force during the period of Ms. Verbeck's constructive service at issue.  Def.'s Reply to Pl.'s Resp. to Cross-Mot. for Judgment on the Administrative Record ("Def.'s Reply") at 13, ECF No. 168.

[11]The Board's earlier incomplete decision on pay and allowances allowed Ms. Verbeck a reimbursement of state income taxes paid, but the Board changed its position upon the fourth remand.  Pl.'s Mot. at 19-20.

California income tax.  Def.'s Reply at 6-7; Pl.'s Opp'n at 4-5.  The government argues that Ms. Verbeck's voluntary decision to remain in California and to obtain mitigating employment in California, despite PHS's offer to pay for her return to Florida, was the reason she became a resident of California and subject to California state income tax.  Def.'s Reply at 6-7.[12]

In these circumstances, although Ms. Verbeck would have not been subject to California state income tax had she remained with PHS, her decision to find mitigating employment in California rather than returning to Florida was the reason she was subject to income taxation in California.  As a result, upon reinstatement, Ms. Verbeck may seek return of her taxes from California, but PHS has no legal obligation to reimburse her for California taxes paid.

### D.  Other Benefits

#### 1.  Annual leave.

The Board determined that if Ms. Verbeck were reinstated, she could recover $808.10 for four days of unused annual leave.  Decision on Remand at 5-6.  Ms. Verbeck contends that she should receive $108,666.92, accounting for leave from June 1, 2002, through December 31, 2013.  Pl.'s Mot. at 24.[13]  While both parties agree that she would generally be restricted to 60 days of accrued leave, *see* 42 U.S.C. § 210-1(a) (explicitly prohibiting "annual leave to be accumulated in excess of sixty days"), they disagree whether this restriction should be applied to Ms. Verbeck.  Ms. Verbeck argues that the government is estopped from applying this statutory provision based upon the government's affirmative bad conduct in Ms. Verbeck's termination and subsequent administrative decisions.  Pl.'s Opp'n at 28-29.  The government responds that there was no bad faith by the government in discharging Ms. Verbeck, and there is a particularly strong presumption that the government acted in good faith.  Def.'s Cross-Mot. at 26 ("[T]here is a 'strong, but rebuttable, presumption' that the military discharges its duties 'correctly, lawfully, and in good faith.'" (quoting *Bernard v. United States* 59 Fed. Cl. 497, 501 (2004))); *see also Melendez Camilo*, 642 F.3d at 1045.  Neither Ms. Verbeck's nor the government's contentions are supportable in this regard.  Ms. Verbeck's assertion that the government acted based on pretextual and discriminatory grounds and subsequently attempted to cover up documents was

---

[12]Additionally, the government argues that upon correction of her records, reinstatement, and recognition of constructive service, Ms. Verbeck may be able to recover her taxes from the state, but the federal government is not responsible for her state taxes.  Def.'s Reply at 7.  Ms. Verbeck disagrees with the government's position that she is responsible for seeking a refund of income taxes from California.  Pl.'s Opp'n at 6.

[13]Ms. Verbeck does not provide detailed calculations for the derivation of this number, *see* Pl.'s Mot. at 24 n.31, but it appears to be 8.22% of her total pay.  The Board rejected this calculation on the fourth remand because Ms. Verbeck included specialty pay and a cost of living adjustment to her total pay, which is not permitted under 37 U.S.C. § 501(g).  *See* Decision on Remand at 6.

When she was separated from the PHS Commissioned Corps, Ms. Verbeck had an unused annual leave balance of 56 days, for which she was paid $11,313.43 in June 2002.  Def.'s Cross-Mot. at 25.

not the basis for the court's decision in July 2013.  Instead, the court determined that Ms. Verbeck's termination was procedurally defective, making no finding of bad faith by the government.  *Verbeck III*, 111 Fed. Cl. at 752.  The denial of process mandated by statute and regulations, without more, is insufficient to estop the application of 42 U.S.C. § 210-1(a).  Therefore, Ms. Verbeck may recover damages only for four days of unpaid annual leave, as the Board determined.

### 2.  *Morale, welfare & recreation.*

Ms. Verbeck seeks $47,347.46 in what she calls "lost morale, welfare, and recreation benefits," which are non-cash benefits provided by the armed services to its military personnel, and which, she argues, should be deemed "other pecuniary benefits" within the meaning of 10 U.S.C. § 1552(c).  Pl.'s Mot. at 14-15.[14]  She provides a valuation of these benefits by a proffered expert who submitted a brief report calculating Ms. Verbeck's benefits based upon the cost to the government as estimated in a study by the Government Accountability Office.  *See* Pl.'s Opp'n, App. A.  The Board rejected Ms. Verbeck's claim of lost benefits for morale, welfare, and recreation because Ms. Verbeck did not provide documentation regarding her actual use of these benefits while she was on active duty.  Decision on Remand at 7.  In support of the Board's decision, the government cites decisions holding that privileges included in "lost morale, welfare, and recreation" are not pecuniary, and therefore not recoverable.  Def.'s Cross-Mot. at 24 (citing *Dilley*, 627 F.2d at 414 ("[C]laims for reimbursed allowances for post exchange and commissary privileges . . . appear to be speculative in amount, hence should not have awarded."), and *Lord v. United States*, 2 Cl. Ct. 749, 756 (1983) ("The privilege of patronizing a military commissary or exchange is not a pecuniary benefit.")).  Ms. Verbeck argues that decisions applying the definition of "pecuniary benefit" should prevail.  Pl.'s Mot. at 15 (citing *Colvill v. United States*, 596 F. Supp. 789, 791 (E.D. Mich. 1984) (finding pecuniary gain when a service member sold discounted merchandise bought at a commissary for profit), and *Jefferson Cnty. Pharma. Ass'n, Inc. v. Abbott Labs.*, 160 U.S. 450,172 (1983) (Stevens, J., dissenting) (comparing a municipal hospital operating a pharmacy with a military post exchange in a pharmaceutical antitrust case)).

Ms. Verbeck's claim for lost morale, welfare, and recreation benefits, as defined by Ms. Verbeck, is too speculative to be the basis for an award.

### 3.  *Education.*

Ms. Verbeck contends that the Board erred when it did not provide a monetary award for her lost educational benefits, which would have been available to her through PHS.  Pl.'s Mot. at 29.  She provides no factual or legal support for this claim.  The Board reasoned that she failed to present any information indicating that she used the benefits while with PHS or that she would have used the benefits if she had remained with PHS.  Decision on Remand at 6.  The Board's decision in this regard is upheld.

---

[14]These benefits include patronizing post exchanges and commissaries along with use of military facilities (including resorts and gyms) and discounted travel available to military personnel.  Pl.'s Mot. at 18.

## E.  Adjustment of Mitigation Offsets

The Board offset Ms. Verbeck's back pay and allowances by her civilian income, which totaled $1,196,993.94.  Decision on Remand at 9-10.  Ms. Verbeck contends that the Board erred in rejecting her argument that only a quarter, rather than the whole, of her civilian income should offset the back pay and allowances.  Pl.'s Mot. at 31.  The core of Ms. Verbeck's argument is that she could have worked concurrently at both PHS and in civilian employment, *i.e.*, by moonlighting, and therefore PHS should not fully offset Ms. Verbeck's civilian income since she could have had substantial civilian earnings while still working for PHS.  Pl.'s Mot. at 33-34.  The government supports the Board's decision, noting that while moonlighting earnings can be exempted from offset in some circumstances, Ms. Verbeck does not qualify for this exception.  Def.'s Cross-Mot. at 13 (citing *Groves v. United States*, 30 Fed. Cl. 28, 37 (1993) ("In military pay cases, moonlighting earnings are not subject to offset if such outside income could have been received by the serviceman prior to discharge. . . .  Essentially, if civilian earnings are a substitution for military pay rather than a supplementation of military pay, setoff is mandated."), *rev'd on other grounds*, 47 F.3d 1140 (Fed. Cir. 1995)).  The Board rejected Ms. Verbeck's argument because she never worked at two jobs, either at PHS or since leaving PHS, and the demands of her workstation with PHS would not have permitted her to be employed at a part-time civilian position.  Decision on Remand at 8-9.  Ms. Verbeck's argument that she could have worked two positions is not based on fact.  Instead, her civilian earnings are better characterized as a mitigating substitute for her military income, not a supplementation of such income.

Ms. Verbeck also contends the Board erred when it did not limit the offset by expenses incurred in her civilian work, identifying particularly moving expenses, the loss from selling her condominium to relocate to La Jolla, and parking fees for her new job.  Pl.'s Mot. at 29-31.  In her view, these costs were associated with, and necessary for, her new job and should be deducted from her offset.  Pl.'s Opp'n at 14, 17.  In support of her argument, Ms. Verbeck relies on *Naekel v. Department of Transp., Fed. Aviation Admin.*, 850 F.2d 682 (Fed. Cir. 1988), which ruled that documented relocation expenses which would normally be reimbursed by the government when an employee transferred locations should be recognized in calculating an income offset.  *See* Pl.'s Opp'n at 14.  In *Naekel*, the court allowed job search expenses and relocation costs to be applied to reduce offsetting civilian earnings by an improperly terminated government employee who found employment which required him to relocate – expenses which if he were relocating as a government employee, the agency would have paid.  850 F.2d at 685-86.  Notably, Ms. Verbeck's moving costs, which totaled $2,351, would to some extent have been covered by PHS under 37 U.S.C. § 477, which provides for a dislocation allowance.  The Board characterized the claim for moving costs as a tort claim and failed to consider that the government would normally have compensated Ms. Verbeck for a relocation.  The dislocation allowance rate depends upon the particular servicemember's pay grade and dependency status at the time of the move, 37 U.S.C. § 477(c), and may not cover the entirety of her moving costs.[15]  The particular rate of the allowance for Ms. Verbeck, who was in pay grade O-4 in 2002, was $2,118.10.  Joint Federal Travel Regulations, Ch. 5, Part J, Table U5G-1Primary DLA Rates

---

[15]This rate also varies upon whether or not the servicemember has dependents.  Ms. Verbeck claimed no dependents in 2002, AR4-081, and therefore is eligible for the "without dependents" amount.

(effective Jan. 2002).[16]  She is able to subtract this amount from the offset of her earned civilian income.  However, the loss in the sale of her condominium and parking fees are not expenses for which PHS would normally have paid.  Thus, she is permitted to reduce the offset by a portion of her moving costs, but not also by the loss in the sale of her condominium or parking fees associated with her new employment.

## CONCLUSION

For the reasons stated, Ms. Verbeck's motion for judgment on the administrative record is GRANTED IN PART and DENIED IN PART.  In the same vein, the government's cross-motion on the administrative record is DENIED IN PART and GRANTED IN PART.

Ms. Verbeck's termination by the PHS Commissioned Corps is set aside and her separation on June 1, 2002 is invalidated.  She shall be reinstated to duty at the appropriate rank. She is awarded $888,281.65 in base pay, $20,602.33 in cost of living allowance, $320,135.40 in basic allowance for housing, $28,301.72 in basic allowance for subsistence, $26,493.76 in specialty pay, $25,765.50 for medical expenses, $13,261.02 for dental expenses, and $808.10 in unpaid annual leave.  This award is offset by her civilian earnings of $1,196,993.94, less moving costs of $2,118.10, resulting in an offset amount of $1,194,875.84.  The total monetary award is thus $128,773.64, computed through December 31, 2013.  The Public Health Service Commissioned Corps shall also provide Ms. Verbeck with commensurate back pay and allowances, consistent with this decision, for the period beginning January 1, 2014 and extending to the date Ms. Verbeck is reinstated to duty.

The clerk is directed to enter judgment in accord with this disposition.

Ms. Verbeck is awarded her costs of suit.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

[16]The particular table for 2002 can be found at the Department of Defense's website, http://www.defensetravel.dod.mil/Docs/perdiem/browse/Allowances/Dislocation_Allowance/DLA-2002-01-01.pdf?CFID=393612&CFTOKEN=32b27bc4448169fa-30B9E8D0-F2B2-525C-839834B1CE4C4443 (last accessed on September 10, 2014).